IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN SECTION OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CORTEZ D. BROWN, DEONTAE TATE, and JEREMY S. MELTON on behalf of themselves and all similarly situated persons, | )<br>)<br>)<br>)<br>)<br>)   **Case No. _____** |
| PLAINTIFFS, | )<br>)<br>)   **CLASS ACTION COMPLAINT FOR** |
| v. | )   **VIOLATIONS OF THE CIVIL RIGHTS**<br>)   **ACT OF 1871, 42 U.S.C. § 1983, AND**<br>)   **TENNESSEE COMMON LAW**<br>)<br>) |
| BILL OLDHAM, in his individual capacity and in his official capacity as the Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity and in his official capacity as the Jail Director of the Shelby County, Tennessee; CHARLENE McGHEE, in her individual capacity and in her official capacity as the of Assistant Chief Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity and in her official capacity as the Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; and TYLER TECHNOLOGIES, INC., a foreign corporation | )   **JURY TRIAL DEMANDED**<br>)   **PURSUANT TO FED. R.  CIV. PRO. 38(a)**<br>)   **& (b)**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| DEFENDANTS. | ) |

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiffs Cortez D. Brown, Deontae Tate, and Jeremy S. Melton, on behalf of themselves

and all other similarly situated persons, by and through their designated attorneys, and for their

Class Action Complaint allege as follows:  All allegations in this Complaint are based upon the

investigation of counsel, except the specific allegations pertaining to the named Plaintiffs, which are based upon personal knowledge.  As of the date of this Complaint, no discovery has been conducted.  As a result, it is likely that once the discovery process is underway, the named Plaintiffs will seek leave to amend their Complaint to add new factual allegations and/or new claims.

# I.

## <u>NATURE OF THE ACTION</u>

1.     This is a class action brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983") and 1988 and Tennessee common law in order to remedy Defendants actions in causing hundreds of Shelby County arrestees to be deprived of their constitutional rights by subjecting them to, *inter alia*, (i) unlawful dentition by failing and refusing to permit arrestees to post criminal bonds that are pre-set on their arrest warrants, (ii) unlawful dentition of those arrestees who have no pre-set bond contained in their arrest warrants by failing and refusing to timely process them so that they may be arraigned and have the criminal bonds set, (iii)  unlawful dentition by the failing and refusing to release arrestees who have in fact posted bond, (iv) unlawful dentition by failing and refusing to release arrestees who have had their charges against dismissed, and/or (v) unlawful dentition by re-incarcerating arrestees on warrants that have been served and previously satisfied (*i.e.*, incarceration of a person on the same warrant twice), all of which has proximately caused these arrestees to be unlawfully detained and, thus, suffer damages. The named Plaintiffs and the Class Members seek declaratory and permanent injunctive relief as well as an award of compensatory damages against Defendants.

## II.

## <u>SUBJECT MATTER JURISDICTION AND VENUE</u>

2.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1343(a) on the grounds that the claims asserted herein arise under Section 1983 and Section

1988.

3.      With respect to the state law claims against Defendant Tyler Technologies, Inc.,

this Court also has original subject matter jurisdiction over this Class Action pursuant to the

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Pursuant to § 1332(c)(2), the named

Plaintiffs are citizens of Tennessee (and two-thirds or more of the Class Members are citizens of

Tennessee). Pursuant to § 1332(d)(10), Defendant Tyler Technologies Inc. is a corporation

organized under the laws of the Delaware, with its principal place of business in Plano, Texas,

and, as such, is a citizen of the States of Texas and Delaware.   As a result, the named Plaintiffs

and Defendant are citizens of different States, pursuant to § 1332(d)(2)(A).

4.      Upon information and belief, the proposed Class exceeds 100 persons.  Pursuant

to the 28 U.S.C. § 1332(d)(6), the aggregate amount of the Class Members' claims substantially

exceeds $5,000,000.00 and, thus, exceeds the requisite amount in controversy set forth in §

1332(d)(2).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and

(c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged

herein occurred in this judicial district.

**III.**

**THE PARTIES AND PERSONAL JURISDICTION**

6.      Plaintiff Cortez D. Brown (hereinafter referred to as "Plaintiff Brown") is an individual residing in Memphis, Tennessee.

7.      Plaintiff Deontae Tate (hereinafter referred to as "Plaintiff Tate") is an individual residing in Memphis, Tennessee.

8.       Plaintiff Jeremy S. Melton hereinafter referred to as "Plaintiff Melton") is an individual residing Olive Branch, Mississippi.

9.      Defendant Bill Oldham (hereinafter "Defendant Oldham" or "the Sheriff") is the Sheriff of Shelby County, Tennessee and may be served with process at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103. Defendant Oldham is named in this action both in his individual capacity and his official capacity as the Sheriff of Shelby County.

10.      Defendant Robert Moore (hereinafter "Defendant Moore" or "the Chief Jailor") is the Chief Jail Director of the Shelby County Jail and may be served with process at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103. Defendant Moore is named in this action both in his individual capacity and his official capacity as the Chief Jail Director of the Shelby County Jail.

11.      Defendant Charline McGhee (hereinafter "Defendant McGhee" or "the Assistant Chief ") is the Assistant Chief of Jail Security of the Shelby County Jail and may be served with process at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103. Defendant McGhee is named in this action both in her individual capacity and her official capacity as the Assistant Chief of Jail Security of the Shelby County of the Shelby County Jail.

12.      Defendant  Debra Hammons (hereinafter "Defendant Hammons" or "the Jail

Programmer ") is the Assistant Chief of Jail Programs of the Shelby County Jail and may be served with process at 201 Poplar Avenue, 9th Floor, Memphis, Tennessee 38103. Defendant Hammons is named in this action both in her individual capacity and her official capacity as the Assistant Chief of Jail Programs of the Shelby County Jail.

13. Defendant Shelby County, Tennessee (hereinafter "Defendant Shelby County" or "the County") is a Tennessee municipality which , by virtue of Plaintiffs' claims against Defendants Oldham, Moore, McGhee and Hammons in their official capacity, is a party defendant to this matter. Service upon Defendant Shelby County is perfected by service upon any one of the Defendants Oldham, Moore, McGhee or Hammons.

14. Defendant Tyler Technologies, Inc (hereinafter referred to "Defendant Tyler Tech.") is a corporation organized under the laws of the State of Delaware, with its principle place of business located at 5101 Tennyson Parkway, Plano, Texas 75024. Service of process may be accomplished on Defendant through its registered agent for service of process, Capitol Corporate Services, Inc located at 992 Davidson Drive, Suite B., Nashville, Tennessee 37205.

15. This Court has both general and specific personal jurisdiction over Defendants because each Defendant has had substantial and continuous contact with Tennessee. As a result, this Court has personal jurisdiction over Defendant pursuant to TENN. CODE ANN. §§ 20-2-214(1) and (2) and (6) and 20-2-223(1), (3) and/or (4) on the grounds that the claims asserted against it arise from its transaction of business within Tennessee and on the grounds that it has committed a tortious act within Tennessee. Furthermore, Defendants' contacts and actions were directed toward Tennessee and thus warrant the exercise of personal jurisdiction over it pursuant to TENN. CODE ANN. § 20-2-225(2).

**IV.**

## FACTUAL ALLEGATIONS

**A.    Summary of Class Allegations**

16.    For almost twenty years, the Shelby County Jail (the "Jail") has employed a computer system known as "JSSi" to process and track the arrest files, criminal cases and court records of inmates at the Jail (hereinafter referred to as the "Criminal Tracking System") so as to carry out its administrative policies governing, *inter alia*, the posting of bonds, the pre-trial arraignment of arrestees, the release of arrestees whose bonds have been posted or whose cases had been dismissed and the confirmation that arrest warrants have been in fact carried out and satisfied.  The JSSi system appears to have worked quite well during this time frame.

17.    However, in October 2016, in an effort to replace the JSSi so that more government agencies could receive criminal information, the County rolled out a new Computer Tracking System which it denominated as "the Shelby County Integrated Criminal Justice System (iCJIS) Roadmap."   At the heart of this new Computer Tracking System is a software platform created and marketed by Defendant Tyler Tech known as "Odyssey."

18.    The County, however, was warned and/or should have had knowledge  that the Odyssey system would not work and that the tracking and protection of Jail arrestees could and would be jeopardized if it were adopted.

19.    The County ignored these dire warnings by recklessly choosing to implement the Odyssey system.  Indeed, the County's unreasonably inefficient implementation of the Odyssey system constituted deliberate indifference with respect to Plaintiffs and the Class Members thereafter by causing inmates to linger for days and weeks in the Jail in direct violation of their constitutional rights.

20.    For example, Defendants, acting with deliberate indifference, failed to permit many arrestees to post bonds that were preset by their arrest warrants, causing these persons to

6

be imprisoned for days and even weeks – often over petty crimes such as driving on a suspended license and public intoxication. Moreover, when these arrestees actually were allowed to post bond (and in fact did so), the County nevertheless recklessly failed to acknowledge their bond postings, thus continuing to unlawfully detain them.

21.     Additionally, Defendants, with deliberate indifference, failed and refused to process and arraign arrestees so that their bonds could even be set, causing them to be detained for days and even weeks without a bon setting.

22.     The County further failed to release prisoners whose cases had been dismissed, detaining them for days and weeks before determining that there were court orders dismissing the charges against them.

23.     Lastly, the County's deliberate inaction caused many persons who had been arrested and released to be re-arrested on the same warrant, again in violation of their constitutional rights.

24.     Plaintiffs allege that the County's unreasonably inefficient implementation of its administrative policies amounts to a policy of deliberate indifference and/or inaction to their constitutional rights.

**B.**     **The County Establishes an IT Steering Committee that is Told the Odyssey Software Will Not Work.**

25.     The County formed an IT Steering Committee from the Shelby Count Criminal Justice Coordinating Council to study an overhaul of the JSSi Computer Tracking System. Since JSSi tracks the initiation and disposal of over 28,000 criminal cases per year, the selection and implementation of a competent and efficient Computer Tracing System

26.     The IT Committee established an iCJS Executive Committee of which the Sheriff was a member.  The IT Committee received request for proposals from a number of independent

contractor software vendors, including Defendant Tyler Tech.  Defendant Tyler Tech promoted to the County the purchase and implementation of its Odyssey Case Management System, claiming that it could provide a fully integrated court and justice solution with up to date information.

27.    Upon information and belief, the Sheriff and the County received information from various members of the IT Steering Committee that the Odyssey software was not compatible with the needs of the Computer Tracking System and would not be appropriate.  For example, Criminal Circuit Court Judge Lee Coffee told this committee that the Odyssey Case Management platform would simply not work well and that another solution should be sought out.

28.    As a result, the Sherriff and the County were expressly on notice that Odyssey was incapable of serving as a proper Computer Tracking System.  Indeed, several other counties around the country have experienced significant problems with Defendant Tyler Tech's Odyssey.

29.    In 2011, Ector County of Odessa, Texas experienced data loss and other significant problems with Odyssey; in fact, these problems were so significant that it withheld payment from Defendant Tyler Tech. In 2011, Merced County California experience a breakdown in communications between the criminal court and the jail which were caused by Odyssey.  Likewise, in 2014, Cameron County Texas also experienced significant problems with its tracking of inmates caused by Odyssey.

30.    Lastly, earlier this year, Alameda County, California's Odyssey caused havoc with its criminal justice system.

31.    Defendant Tyler Tech knew or should have known that Odyssey was not a good fit for the County's needs. Specifically, upon information and belief, Defendant Tyler Tech's

Odyssey is a platform that, in order to be successful, must be perfectly compatible with the other aspects of the government entity's system.  Instead of altering Odyssey to conform to the government entity's system, Defendant Tyler Tech attempts to "shoehorn" the government entity's system to Odyssey in order to "make it fit."  Defendant Tyler Tech does so in order to save money that would require significant custom changes to Odyssey.  It is this "one size fits all approach" that caused the massive and disturbing problems with the County and the Jail as described below.

**C.   Ignoring these Warnings, the Sherrif and the County Adopt and Defendants Moore, McGhee, and Hammons Implement the Odyssey System and the Violation of Arrestees' Rights Ensues.**

32.     Notwithstanding these serious storm warnings, the Sheriff and County determined nevertheless to contract with Defendant Tyler Tech to install and implement the Odyssey Case Management System.  Specifically, on November 1, 2016, Defendants Oldham, Moore, McGhee and Hammons terminated the Jail's use and reliance on JSSi and began to record all arrest and inmate activity by hand. The on November 7, 2016, Defendants Oldham, Moore, McGhee and Hammons went "live" with the Odyssey Case Management System.

33.     Immediately thereafter, the Class Members as defined below became subject to a Computer Tracking System that could not and would not properly track their arrest records and criminal cases, forcing them to become "lost" in the Jail.  General Sessions Criminal Court Judge Anderson characterized the County's failures as follows:

> "I apologize for the system. I don't know what the problem is.  Nobody can tell me what the problem is, where the problems are.  That's just a terrible example of the problems we are having.  You know I'm not an IT person,  I don't  understand how computers operate. It's not my job.  My job is to make sure that people who are charged with criminal offenses have their day in court in a timely manner, have a bond set & get the opportunity to process their selves thru the system.  They're just charged not convicted.  I'm not talking about a single person that's been

convicted.  Every single person I'm talking about that comes in my court initially are only charged with criminal offenses. Nobody has been convicted of a thing.  You called this a debacle? The way I've seen it in the last week and a half, that's the best way I can come up with.  They are doing the best they can but much of this should have been anticipated.  I've been told this company has been implemented in numerous big cities across the country.  I can't believe we're the first ones to have these terrible problems.  And one person being in jail too long is bad enough, but 15, 20, 30.  I went down last weekend, last Thursday before the holiday and I walked thru the jail and went to a booking session.  He was sleeping on the floor, people sleeping in chairs. There was no movement. It was terrible.  I mean it was unbelievable.  I thought how could this be happening in Shelby County where our system has flowed so smoothly since I've been a judge.  Frankly, it's worked very well for years.  We expected problems but we didn't expect problems of this magnitude, where people remain and languish in jail without even getting a bond set, without having court appearance set and us not even knowing how to go about solving the problem.  ...how do you lose somebody in the system for three weeks...That's an excellent question.  I'm going to try to get answers to that. I'm not able to get answers to get.  Kinda like running into one wall after another, anytime I ask questions "how did this happen" they said it's not our fault, it was their fault. I go the next person, it wasn't our fault.  We never get to the bottom line, we never get to the end person that the buck stops at.  And the only thing I can think of it's the computer system.  Everybody says it's the comp. system.  well, fine, but I've got to get people into court.  I understand that answer, you can only do the best you can do  and they obviously did not anticipate problems of this magnitude you've heard.  every single group that has been asked has thrown out 6, 7, 8, 9 different problems.  Now that takes time obviously. The question I suppose is why hasn't more of this anticipated on the front end before.  In a city this size, in a county this size, in a magnitude of having a computer system that's archaic but worked fine before fine.  And a computer system that's going to be the way of the future doesn't talk to the archaic one.  They should have anticipated that this is going to be a problem.  Maybe it's like you speak English and I speak French.  We are two people but you don't understand French.  It's not helping me to talk to you.  That's what I am hearing in there.  ...rights being violated & the Constitution?  Well, it's very simple, it's what I do for a living, that the oath I took, what I have to do is to make sure the criminal justice system flows."

34.     As a result, the County had no effective ability to determine and ensure: (i) that arrestees with pre-set bonds in their arrest warrants could post such bonds and be released, (ii) that those arrestees who had no pre-set bond contained in their arrest warrants were timely processed so that they would be arraigned and have the criminal bonds set be released, (iii) that those arrestees who had in fact posted bond were released, (iv) that those arrestees who had their charges against dismissed were released, and/or (v) that those who had been arrested and released would not be re-incarcerated on the same warrant.

**C.     Violations of the named Plaintiffs' Rights.**

35.     On November 6, 2016, Plaintiff Brown was arrested on a petition for revocation of his suspended sentence and taken into custody at the Jail.  On November 7, 2016, Judge Mark Ward entered an order dismissing these charges.  However, Defendants Oldham, Moore, McGhee and Hammons did not release Plaintiff Brown from the Jail until November 14, 2016, a full seven days after these charges were fully dismissed.  Plaintiff Brown was forced to endure harsh conditions, which included sleeping on the floor due to overcrowded conditions.

36.     On November 6, 2016, Plaintiff Tate was arrested and incarcerated in the Jail because he failed to appear at a court date with respect to a charge of driving while his license was suspended or revoked.  His arrest charged contained a pre-set bond of $100.00. At the time of his arrest, Plaintiff possessed $255.00 in cash and, therefore, Plaintiff Tate instructed officers at the Jail to deducted $100.00 from his property so as to post bond and secure his release. Plaintiff Tate was repeatedly told that he was not in the Computer System and thus that he could not post bond. Plaintiff Tate lingered in the Jail until November 11, 2016, at which time Defendants finally allowed him to post bond and released him.

37.     On  November 10, 2016, Plaintiff Melton was arrested on a criminal information for a misdemeanor charge of possession of a controlled substance.  On November 14, 2016,

Plaintiff Melton's charges were dismissed by the Judge Blackett for time served by entry of court order. However, Plaintiff Melton was not released from the Jail on November 14. Instead, despite Plaintiff Melton's pleas for release, Defendants Oldham, Moore, McGhee and Hammons did not release Plaintiff Melton at that time nor for four more days thereafter, based on their subordinates claims that his order was not in the Computer System. Finally, on November 18, 2016, Plaintiff Melton was released from the Jail.

C.     **Uniform Damages to the Plaintiffs and the Class Members.**

38.     Plaintiffs and the Class Members have sustained damages as the result of the unlawful dentition proximately caused by Defendants' acts and omission.

39.     Plaintiffs assert that each Class Member is entitled to $18,000 per day that they were unlawfully incarcerated or unlawfully re-incarcerated (approximately $750 per hour).

40.     Upon information and belief, Plaintiffs anticipate that at least 100 Class Members were unlawfully detained an average of three (3) days. As such, Plaintiffs allege that the damages to themselves and the Class defined below is $5,400,000.00.

41.     Plaintiffs reserve the right to amend this allegation based upon the discovery that will be conducted in this action.

## V.

## CLASS ACTION ALLEGATIONS

42.     The named Plaintiffs bring this action as a Class Action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, and pursuant Rule 23(b)(2) and/or 23(b)(3) as defined follows:

> From November 7, 2016 to the present, Plaintiffs, and all of similarly situated persons who were arrested and incarcerated in the Shelby County Jail and who (i) were denied the ability to post criminal bonds that were pre-set on their arrest warrants, (ii) were not to timely processed, so that their criminal bonds could be

arraigned and criminal bonds set, (iii)  were not released from custody when they had in fact posted their required bonds, (iv) were not released from custody when in fact the charges against them had been dismissed, and/or (v) were re-incarcerated on warrants that had previously been served and satisfied (i.e., were re-incarcerated on the identical warrant that had been previously served).

Excluded from the Class are the named Defendants, their agents, affiliates, and employees, the Judge assigned to this matter and his or her staff.

43.    **Numerosity.**  The requirements of Rule 23(a)(1) are satisfied in that there are too many Class Members for joinder of all of them to be practicable.  Upon information and belief, these Class Members exceed over 100 in number.  This Class, as defined above, meets the numerosity requirement.

44.    **Commonality.**  The claims of the Class Members raise numerous common issues of fact and/or law, thereby satisfying the requirements of Rule 23(a)(2).  These common legal and factual questions, which may be determined without the necessity of resolving individualized factual disputes concerning any Class Member, include, but are not limited to, the following questions:

(i)    Whether the U.S. Constitution protects an arrestee's right to comply with a preset bond and, thus, be released from incarceration.

(ii)    Whether the U.S. Constitution protects an arrestee's right to a timely arraignment so that he or she may have the required bond set and posted for release.

(iii)    Whether the U.S. Constitution protects an arrestee's right to be released from incarceration upon a criminal court's dismissal of the charges against him or her.

(iv)    Whether the U.S. Constitution protects an arrestee's right to be released from incarceration upon posting the required bond.

13

(v)     Whether the U.S. Constitution protects an arrestee's right to be free from incarceration based upon the same warrant that was previously served and satisfied.

(vi)    Whether the rights alleged to be protected by the U.S. Constitution set forth in issues (i) through (iv) above, were clearly established.

(vii)   Whether the acts or omissions of Defendants Oldham, Moore, McGhee and Hammons in connection with adopting and implementing the Odyssey Case Management System were the proximate cause of the constitutional deprivations of Plaintiff and the proposed Class and/or whether these Defendants' failure to properly train and supervise their subordinates with respect to the Odyssey Case Management System was the proximate cause of the constitutional deprivations of Plaintiff and the proposed Class.

(viii)  Whether that the County's implementation of its administrative policies amounts to a policy of deliberate indifference and/or inaction to their constitutional rights.

(ix)    Whether Tyler Tech owed an ordinary duty of care to Plaintiffs and the proposed Class that its Odyssey system would operate and could be operated in a proper manner such that their rights to be released from incarceration would and could be timely honored.

(x)     Whether Tyler Tech breached its ordinary duty of care to Plaintiffs and the proposed Class.

(xi)    Whether Tyler Tech breach of its ordinary duty of care to Plaintiffs and the proposed Class has proximately caused them damages.

45.    **Typicality**.  The claim of the named Plaintiffs is typical of the unnamed Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3). For example, the named Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class Members were injured or damaged by the same wrongful practices in which Defendant engaged, namely the failure and refusal to honor their due process rights secured under the U.S. Constitution.

46.    **Adequacy of Representation.**  The requirements of Rule 23(a)(4) are satisfied in that the named Plaintiffs has a sufficient stake in the litigation to vigorously prosecute their claims on behalf of the Class Members and the named Plaintiffs' interests are aligned with those of the proposed Class. There are no defenses of a unique nature that may be asserted against Plaintiffs individually, as distinguished from the other members of the Class, and the relief sought is common to the Class.  Plaintiffs do not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class, and has no conflict with any other member of the Class.

47.    Further, Plaintiffs have retained competent counsel experienced in class action litigation, including consumer and financial services class actions, to represent them and the Class Members in this litigation. To wit, Plaintiffs' chosen counsel – Watson Burns, PLLC – has successfully prosecuted class actions in several matters, including, but not limited to, class action suits brought against law firms for charging and collecting unlawful fees and expenses.  *See, e.g., Howard et al  v. Wilkes & McHugh, P.A.*, Case No. 2:06-cv-02833-JMP-cgc (W.D. Tenn. Filed 2006)(appointing Watson Burns, PLLC as Class Counsel and ultimately approving $4 million settlement in connection with overcharged legal fee); *Manjunatha A. Gokare, P.C. and Goldstein, Borgen, Dardarian & Ho, P.C. v. Federal Express Corporation, et al.*, Case No. 2:11-

cv-2131-JTF-cgc (W.D. Tenn. Filed Nov. 11, 2011)(appointin Watson Burns co-lead class counsel representing nationwide class in breach of contract and RICO claims against international freight shipper alleging overcharging for residential delivery surcharge fees for delivers made to non-residential locations; nationwide class was certified and a settlement of $26 million was approved); *Youngblood v. Linebarger, Goggan, Blair & Sampson, LLP*, Case No. 10-cv-2304 SHM-tmp (W.D. Tenn. filed Mar 10, 2010)(Watson Burns appointed lead class counsel representing plaintiff class of 48,000 delinquent taxpayers against Texas law firm alleging that Linebarger charged and received an unlawful legal fee from tax payers when pursuing property tax collection suits on behalf of the City of Memphis; the class was certified and ultimately settled for $7.4 million); *Ham v. Swift Transportation Co., Inc*., 275 F.R.D. 475 (W.D. Tenn. 2011)(Watson Burns appointed co-lead class counsel representing plaintiff class against national trucking company challenging the testing practices of a commercial truck driving; class-wide settlement case achieved for compensatory damages and debt write off valued in excess of $17 million).

48.    **Predominance and Superiority.**   All of the requirements for Rule 23(b)(3) are satisfied because the common factual and legal issues identified above are sufficiently cohesive to warrant adjudication by representation.  In particular, the Plaintiffs and the Class Members have suffered a common cause of injury, namely the violation of their due process rights, caused by the common course of conduct engaged in by Defendants. The Class Members' legal claims arise exclusively under Section 1983 and Tennessee law and, therefore, do not involve the application of other states' laws which may have varying degrees of liability and proof. Class action treatment is also superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is

economically unfeasible and procedurally impracticable.  The likelihood of individual Class

Members prosecuting separate claims is remote and, even if every Class Member could afford

individual litigation, the court system would be unduly burdened by individual litigation in such

cases.  Additionally, individual litigation would also present the potential for varying,

inconsistent or contradictory judgments while magnifying the delay and expense to all parties

and to the court system, thus resulting in multiple trials of the same legal issue and creating the

possibility of repetitious litigation.  *Zuccarini v. Hoechst (In re Cardizem CD Antitrust Litig.)*,

200 F.R.D. 326, 335 (E.D. Mich. 2001)("Differences in damages sustained by individual class

members does not preclude a showing of typicality nor defeat class certification"); *Bremiller v.*

*Cleveland Psychiatric Inst.*, 898 F. Supp. 572, 579 (N.D. Ohio 1995)("The above-cited caselaw

demonstrates that the existence of individual damages is not enough to defeat class certification

on the commonality element. Therefore, the court declines to decertify the class on this basis")

As a result, the desirability to concentrate litigation in this forum is significantly present.

Plaintiffs know of no difficulty to be encountered in the management of this action that would

preclude its maintenance of a class action.  Relief concerning Plaintiffs' rights under the laws

herein alleged and with respect to the Class would be proper.

## VI.

## CAUSES OF ACTION

### COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST DEFENDANTS OLDHAM, MOORE, McGHEE, HAMMONS IN THEIR INDIVIDUAL CAPACITIES)

49.     Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully

set forth in this Count.

50.     As alleged above Defendants Oldham, Moore, McGhee and Hammons, acting

under color of state law and with deliberate indifference, violated the rights of Plaintiffs and the

Class Member secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

51.     It is clearly established that: (i) the failure and refusal to permit an arrestee to post the criminal bonds pre-set in his arrest warrant constitutes the unlawful seizure and incarceration of the arrestees, (ii) the failure and refusal to timely process an arrestee (whose warrant has no preset bond) so that he may be arraigned and have his criminal bond set constitutes an unlawful seizure and incarceration of the arrestee, (iii) the failure and refusal to release an arrestee who has in fact his posted required bond constitutes and unlawful seizure and incarceration of the arrestee, (iv) the failure and refusal to release an arrestee who has had the charges against him dismissed, constitutes an unlawful seizure and incarceration of the arrestee and/or (v) the incarceration of an arrestee on a warrant that has been served and previously satisfied (*i.e.*, the incarceration of a person on the same warrant twice) constitutes an unlawful seizure and incarceration of the arrestee.  These unlawful dentitions were without any legal justification. *Allen v. Thompson*, 14 F. Supp. 3d 885, 896 (W.D. Ky. 2014)("detaining someone without any justification violates a clearly established right to be free from unlawful dentition"). It would be clear to any reasonable person – let alone any public law enforcement officer – that these actions are wrongful and unconstitutional. As a result, Defendants Oldham, Moore, McGhee and Hammons are not entitled the any affirmative defense of "qualified immunity" for the individual liability.

52.     Defendants Oldham, Moore, McGhee and Hammons, acting with deliberate indifference, directly participated in and proximately caused the above described constitutional rights violations by adopting and implementing the Odyssey Case Management System.  In the alternative, Defendants Oldham, Moore, McGhee and Hammons, acting with deliberate indifference, failed to properly train and/or their subordinates with respect to the Odyssey Case

Management System, which proximately caused the above described constitutional rights violations.

## COUNT 2 – VIOLATION OF 42 U.S.C. § 1983 (AGAINST DEFENDANTS OLDHAM, MOORE, McGHEE, HAMMONS IN THEIR OFFICAL CAPACITIES AND, THUS AGAINST SHELBY COUNTY)

53.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

54.    As alleged above Defendants Oldham, Moore, McGhee and Hammons, acting under color of state law, violated the rights of Plaintiffs and the Class Member secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.  It is clearly established that: (i) the failure and refusal to permit an arrestee to post the bond pre-set in his arrest warrant constitutes the unlawful seizure and incarceration of the arrestee, (ii) the failure and refusal to timely process an arrestee (whose warrant has no preset bond) so that he may be arraigned and have his criminal bond set constitutes an unlawful seizure and incarceration of the arrestee, (iii) the failure and refusal to release an arrestee who has in fact his posted required bond constitutes and unlawful seizure and incarceration of the arrestee, (iv) the failure and refusal to release an arrestee who has had the charges against him dismissed, constitutes an unlawful seizure and incarceration of the arrestee and/or (v) the incarceration of an arrestee on a warrant that has been served and previously satisfied (*i.e.*, the incarceration of a person on the same warrant twice) constitutes an unlawful seizure and incarceration of the arrestee.  These unlawful dentitions were without any legal justification.

55.    The huge and unreasonable delays in the release from custody of Plaintiffs and the Class were not the result of necessary administrative procedures.  To the contrary, no matter how "reasonable" the County's criminal administrative policies may appear on their face, the

implementation of those policies, through the defective Odyssey system, constitutes a policy of inaction and/or policy amounting to deliberate indifference to the rights of Plaintiffs and the Class Members. Because Plaintiffs and the Class challenge the County's implementation of its criminal administrative policies *in toto*, Plaintiffs and the Class Members are entitled to have their claims against the County tried to a jury. *See*, *Berry v. Baca*, 379 F.3d 764 (9th Cir. 2004)(in Section 1983 action where arrestees were not released until 29 hours after their charges were dismissed, court held that county's summary judgment must be denied, where plaintiffs alleged that the implementation of the county's administrative procedures in toto amount to deliberate indifference).

### COUNT 3 – NEGLIGENCE (AGAINST DEFENDANT TYLER TECH)

56.     Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

57.     As a software company specializing in the development and installation of criminal court and jail inmate tracking computer systems, Defendant Tyler Tech owed duty of reasonable care to Plaintiff and the Class Members to ensure that its Odyssey Case Management System would work in a proper manner such that their rights to be released from incarceration would and could be timely honored.  Defendant, however, breached these duties with its development and installation of Odyssey for the Jail.

58.     As a direct and proximate result of the negligence Defendant Tyler Tech, Plaintiffs and the Class Members have suffered damages.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, the named Plaintiff and the Class Members demand judgment against Defendants Tyler Technologies, Bill Oldham, Robert Moore, Charline McGhee, Debra Hammons and Shelby County, Tennessee, on each Count of the Complaint and pray for the following relief:

1.      Issue service of process and serve the Defendant;

2.      Issue an Order certifying that this action may be maintained as a class action, appointing Plaintiffs and their counsel to represent the Class, and directing that reasonable notice of this action be given by Defendants to all Class Members;

3.      Grant any reasonable request to Amend Plaintiff's Class Action Complaint to conform to the discovery and evidence obtained in this Class Action;

4.      Empanel a jury to try this matter;

5.      Award each plaintiff Class Member compensatory damages who has suffered same in an aggregate amount of not less than $5,400,000.00;

6.      Award Plaintiffs' their reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

7.      Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

8.      Award pre-and post-judgment interest in the amount of 10% per annum pursuant to TENN. CODE ANN. § 47-14-123  in amount according to the proof at trial; and

9.      Grant the Plaintiff and Class Members such further relief as the Court may deem just and proper.

Respectfully submitted,


s/Frank L. Watson, III
Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38104
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com


s/Joseph S. Ozment
Joseph S. Ozment (Tenn. Bar No. 15601)
THE LAW OFFICE OF JOSEPH S. OZMENT, PLLC
1448 Madison Ave.
Memphis, Tennessee 38104
Phone: (901) 525-4357
Email: jozment@oz-law.net

s/Lorna S. McClusky
Lorna S. McClusky (Tenn. Bar No. 16803)
MASSEY, MCCLUSKY, MCCLUSKY & FUCHS
3074 East Road
Memphis, Tennessee 38128
Phone: (901)384-4004
Email: lsmcclusky@gmail.com


*Counsel for Plaintiffs and the putative Class
Members*

22