# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT TURNAGE, CORTEZ D. BROWN, DEONTAE TATE, JEREMY S. MELTON, ISSACCA POWELL, KEITH BURGESS, and TRAVIS BOYD, on behalf of themselves and all similarly situated persons, | § § § § § § § | |
| **Plaintiffs,** | § § | |
| v. | § § § § | Case No. 2:16-cv-02097-SHM/tmp **Consolidated With** Case No.: 2:17-cv-02015-JTF/dkv |
| BILL OLDHAM, in his individual capacity and in his official capacity as the Sheriff of Shelby County, Tennessee; ROBERT MOORE, in his individual capacity and in his official capacity as the Jail Director of the Shelby County, Tennessee; CHARLENE McGHEE, in her individual capacity and in her official capacity as the of Assistant Chief Jail Security of Shelby County, Tennessee; DEBRA HAMMONS, in her individual capacity and in her official capacity as the Assistant Chief of Jail Programs of Shelby County, Tennessee; SHELBY COUNTY, TENNESSEE, a Tennessee municipality; and TYLER TECHNOLOGIES, INC., a foreign corporation, | § § § § § § § § § § § § § § § § § | |
| **Defendants.** | § | |

## DEFENDANT TYLER TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Defendant Tyler Technologies, Inc. ("Tyler") submits this Memorandum in Support of its Motion to Dismiss Amended Consolidated Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   INTRODUCTION

In November 2016, Shelby County went into live production on a new Integrated Criminal Justice Information System, referred to as iCJIS.  Tyler was selected to provide its "Odyssey" software for the Court Management System for the Shelby County Criminal Courts. Shelby County selected separate vendors, unaffiliated with Tyler, to provide software for the Offender Management System at the Shelby County Jail, the Case Management System at the Public Defender's Office, and the "Info Hub" that was responsible for integrating the new software systems into one seamless criminal justice information system.

Plaintiffs were previously inmates at the Shelby County Jail and allege that they were unlawfully detained in the Jail due to "the County's unreasonably inefficient implementation of the Odyssey system."  Consolidated Complaint at ¶23.  Plaintiffs, however, appear to be conflating Tyler's Odyssey software with the overall iCJIS system that was implemented by Shelby County.  Based on this misunderstanding, Plaintiffs allege *in an entirely conclusory manner* that Tyler's Odyssey system used by the criminal court is responsible for their allegedly unlawful detentions *at the Jail*.  *See, e.g.,* Consolidated Complaint at ¶98 (incorrectly alleging that Odyssey is the "jail inmate tracking computer system" and that Tyler installed Odyssey "for the Jail"). Plaintiffs have not, however, pleaded a single fact that identifies how Tyler's Odyssey system is deficient, how any alleged deficiency in the Odyssey system actually contributed to or caused the alleged unlawful detentions, or how Tyler's implementation of Odyssey was negligent, as nakedly alleged.  Plaintiffs' conclusory allegations are not sufficient to state a claim

for negligence against Tyler.  In addition, as a matter of law, Plaintiffs are barred by the economic loss doctrine from asserting a negligence claim against Tyler absent allegations of personal injury or physical damages.  Because Plaintiffs cannot state a claim on which relief can be granted, the Consolidated Complaint should be dismissed as to Tyler pursuant to Rule 12(b)(6).

## II.    FACTUAL BACKGROUND

Tyler is a leading provider of information management solutions and services for local governments.  Tyler helps its public sector clients—cities, counties, schools and other government entities—to become more efficient, more accessible, and more responsive to the needs of their constituents.  Tyler's client base includes more than 15,000 local government offices in all 50 states, Canada, the Caribbean, and various other international locations.

On July 22, 2013, following a public Request for Proposal, Tyler and Shelby County entered into a contract for Tyler to provide a "Court Management System for the [Shelby County] General Sessions Criminal Court Division, [Shelby County] Criminal Court Division and PreTrial Services" (the "Contract").  Exhibit 1 at p.1.[1]  Per the Contract's Statement of Work, Tyler was required to implement its "Odyssey" system "within Shelby County for the Clerk of the Criminal Court and the Criminal Division of the General Sessions Clerk's Office."

---

[1]    The Consolidated Complaint contains specific references to the Contract and the attached Statement of Work.  *See* Consolidated Complaint at ¶¶36-37.  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, *public records*, items appearing in the record of the case and *exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.*"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (*citing Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis added).  Because the Contract and Statement of Work are referred to in the Complaint and are central to the claims against Tyler, it is appropriate for the Court to consider them in connection with this motion.  Moreover, because of the nature of the Contract, it is a publicly available document that can be accessed at www.shelbycountytn.gov.  For this additional reason, it is proper for the Court to consider the Contract in connection with this Motion.

*Id.* at p. 21.   According to the Contract, Odyssey was to replace "Shelby County's in house developed Court Case Management System, JSS." *Id.*

Importantly, the Contract confirmed that the scope of Tyler's involvement in the overall iCJIS project was limited and did not extend to the Jail software or the Info Hub:

> In conjunction with the replacement of JSS, Shelby County will also be replacing JMS -- its current Jail Management System used by the Jail and IMS -- the current Inmate Management System used by the Correction Center.   The current JMS/IMS/JSS systems are tightly integrated with a custom written interface.   The new iCJIS will be integrated using a service Oriented Architecture solution and an Enterprise Service Bus solution (Info Hub).   Software AG's webMethods will be the Info Hub solution and Global Tel*Link's DSI Offender Management System will be implemented for the Jail and the Correction Center.   New Dawn's JustWare will be used for Case Management by the Public Defender's Office and the Attorney General's Office.
>
> The new Offender Management System, the Court Case Management System and the Public Defender CMS will be part of the Enterprise Service Bus solution (Info Hub) as well as integrated with Shelby County's current document management solution, OnBase.   These systems will be so integrated that a single system will not be able to go live without the data exchanges in place from the other iCJIS systems.   The timelines of the Court System Statement of Work is dependent upon the timelines of the other iCJIS partners.

*Id.* at pp. 21-22.

Based on the Contract and Statement of Work, Tyler provided the Odyssey system software to Shelby County and that system was implemented and integrated into the larger iCJIS system.   On November 7, 2016, Shelby County went "live" with the new iCJIS system. Consolidated Complaint ¶ 42.

On January 9, 2017, Plaintiffs Brown, Tate and Melton filed a putative class action, alleging that Shelby County had violated their constitutional rights by unlawfully detaining them for longer periods of time than appropriate in the Shelby County Jail (the "Brown Case").   On March 13, 2017, the Brown Case was consolidated with a pending matter styled *Powell v. Oldham*, Case No. 2:16-cv-02907, which made similar allegations of wrongful detention at the

Shelby County Jail.  On March 24, 2017, Plaintiffs filed an Amended Consolidated Class Action Complaint in the consolidated action.

The Consolidated Complaint asserts a Section 1983 claim against Shelby County and certain Shelby County officials, which alleges that Shelby County: (1) failed to permit arrestees to post bonds; (2) failed to afford arrestees probable cause hearings within 48 hours; (3) failed to release arrestees who had posted bonds; (4) failed to release prisoners whose cases had been dismissed; and (5) improperly re-arrested individuals on the same warrant.

In addition, Plaintiffs assert a Tennessee state law claim for negligence against Tyler, claiming that Tyler negligently developed and installed the "criminal court and jail inmate tracking computer systems."  Consolidated Complaint ¶98.  Yet, the Consolidated Complaint does not specify what involvement Tyler allegedly had in the "jail inmate tracking" system used at the Shelby County Jail or how the implementation of the Odyssey software at the Shelby County Criminal Courts contributed to the problems that allegedly occurred at the Jail.  Nor does the Consolidated Complaint contain any facts whatsoever to support the suggestion that Tyler negligently designed or implemented the Odyssey system or that Tyler's negligence was the proximate cause of any alleged injury to any of the specified Plaintiffs.

Based on these facts, Plaintiffs' Consolidated Complaint should be dismissed for two, independent reasons.  First, the Complaint fails to allege sufficient facts to support a negligence claim as a matter of law.  Second, Plaintiffs' claim for negligence is barred by the economic loss doctrine, which prohibits the recovery of purely economic damages for negligence because Plaintiffs lack privity of contract with Tyler.

### III.   ARGUMENT AND AUTHORITIES

**A.   *Plaintiffs' Negligence Claim Fails as a Matter of Law.***

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted.  Under the Supreme Court's decision in *Ashcroft v. Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face' to survive a Rule 12(b)(6) motion to dismiss." 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requires "more than a sheer possibility" of entitlement to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 555). Rule 8 does not require pleadings to contain "detailed factual allegations," but it does demand more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'"; "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Moreover, "[a]lthough for the purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 555).

Plaintiffs' allegations here fail, as a matter of law, to properly allege a claim of negligence under the standards established by *Iqbal* and *Twombly*.  The allegations against Tyler specifically are merely conclusory, formulaic recitations that are devoid of any supporting facts. Under Tennessee law, "[i]n order to establish a prima facie claim of negligence ... a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty;

(3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)); *see also Yarnell v. Transamerica Life Ins. Co.*, 694 F. Supp. 2d 849, 853 (E.D. Tenn. 2010). "[N]egligence is not presumed from the mere fact of an accident or injury." *Kae v. Cumberland Univ.*, No. 3:15-00082, 2016 WL 3632804, at *5 (M.D. Tenn. July 7, 2016).

The entirety of the negligence allegation against Tyler is found in Paragraphs 98 and 99 of the Consolidated Complaint:

> 98.    As a software company specializing in the development and installation of criminal court and jail inmate tracking computer systems, Defendant Tyler Tech owed [a] duty of reasonable care to Plaintiff and Class Members to ensure that its Odyssey Case Management System would work in a proper manner such that their rights to be released from incarceration would and could be timely honored. Defendant, however, breached these duties with its development and installation of Odyssey for the Jail.

> 99.    As a direct and proximate result of the negligence [of] Defendant Tyler Tech, Plaintiffs and the Class Members have suffered damages.

These allegations do not state a sufficient claim for negligence for at least two reasons. First, these allegations are premised on incorrect information regarding Tyler's role in iCJIS. Indeed, the Consolidated Complaint goes so far as to incorrectly characterize Odyssey as the "heart" of iCJIS, *see* Consolidated Complaint ¶ 21, hoping to implicate it, by default and implication, as the cause of Plaintiffs' alleged injury. In reality, and as the Consolidated Complaint even establishes through its incorporation by reference of the Contract, the opposite is true—namely that Tyler was not responsible for the "jail inmate tracking computer systems" and did not install Odyssey "for the Jail." As described above, Tyler's Odyssey software was implemented in, and only in, the Shelby County Criminal Courts. Because the Consolidated Complaint is based on an incorrect factual premise, it should be dismissed in its entirety.

Second, and regardless of the incorrect premise upon which the claim is based, the Consolidated Complaint contains no allegation of how Tyler's Odyssey system for the courts was the "cause in fact" of any alleged injury to Plaintiffs, let alone the proximate cause. Nor does the Consolidated Complaint include any specific allegation about how Tyler allegedly breached a duty in its development or installation of Odyssey.

Instead, the Consolidated Complaint merely contains conclusory statements regarding Odyssey's involvement in Plaintiffs' specific detentions. For example:

- Plaintiff Brown alleges that the charges against him were dismissed on November 7, 2016, but he was not released from the Shelby County Jail until November 14, 2016. Consolidated Complaint ¶ 35. Plaintiff Brown, however, makes no allegation regarding how Tyler's Odyssey software was allegedly responsible for his detention or how Tyler's implementation of the system was negligent. The same is true for Plaintiff Melton. *See* Consolidated Complaint at ¶ 70.

- Plaintiffs Burgess, Powell, Boyd and Turnage each allege that he was improperly detained because the Odyssey system did not reflect certain information. Consolidated Complaint ¶ 66, 72, 74, 76. These allegations suggest that the issues stemmed from data entry errors or errors that occurred with either the Jail software or the Info Hub, but not from Odyssey. There is no factual allegation that the alleged data entry failures were the responsibility of Tyler or that they resulted from an Odyssey software problem arising from negligent design or implementation by Tyler.

Moreover, the Consolidated Complaint repeatedly uses vague references to the term "Defendants," improperly lumping Tyler in with the other defendants. *See, e.g.,* Consolidated Complaint ¶¶ 24, 25, 40, 41, 44, 47, 50. This type of group pleading is impermissible and

underscores the Consolidated Complaint's inability to allege facts specific to Tyler.  *See, e.g.*, *Bondex Int'l, Inc. v. Hartford Accident and Indem. Co.*, 667 F.3d 669, 681 (6th Cir. 2011) (finding that "the pleadings' generic references to the misconduct of 'all Defendants'" were "threadbare allegations" that did not satisfy pleading standards without linking factual allegations to a specific Defendant).

In short, the Consolidated Complaint provides no facts that Tyler did anything wrong. Instead, Plaintiffs have plead nothing more than unsupported, conclusory allegations that do not withstand the scrutiny of *Iqbal* and *Twombly* and should be dismissed.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *(citing Twombly,* 550 U.S. at 555)); *see also Thompson v. City of Memphis,* No. 09-2658, 2011 WL 3567436, at *1 (W.D. Tenn. August 15, 2011) ("Plaintiffs' complaint is merely a restatement of Plaintiffs' conclusory allegations coupled with a formulaic recitation of the statutory elements.  This is insufficient to meet the threshold Rule 12(b)6 standard.").   Nor does it appear that Plaintiffs can cure these defects as nothing in the Consolidated Complaint even suggests a connection between Tyler's work on Odyssey at the Shelby County Criminal Courts and Plaintiffs' incarceration at Shelby County Jail.

### B.      The Economic Loss Rule also Bars Plaintiffs' Negligence Claim.

Plaintiffs' claim for negligence also fails based on the application of the economic loss doctrine.  The economic loss doctrine is "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss."  *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 488 (Tenn. 2009).  The Tennessee Supreme Court has described the doctrine as "a general principle that prohibits the recovery of purely economic damages for negligence when the plaintiff lacks

privity of contract with the defendant." *John Martin Co. v. MorselDiesel, Inc.*, 819 S.W.3d 428, 430 (Tenn. 1991). The Tennessee Supreme Court agreed with the policy behind the economic loss doctrine in *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 (Tenn. 1995), and a number of Tennessee appellate courts and federal district courts applying Tennessee law have applied the doctrine in various contexts. *See, e.g., United Textile Workers v. Lear Siegler Seating Corp.*, 825 S.W.2d 83, 84 (Tenn. Ct. App. 1990) ("*Lear Siegler*"); *Ladd Landing, LLC v. Tenn. Valley Authority*, 874 F. Supp. 2d 727 (E.D. Tenn. 2012).

The economic loss doctrine has its origins in the U.S. Supreme Court's decision in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). In *Robins*, the defendant dry dock company negligently damaged a ship's propeller resulting in a delay in the ship's return to service. *Id.* at 307-08. The plaintiff lost use of the ship, resulting in economic losses for the charterer of the ship. The Supreme Court refused to permit the ship charterer to recover on a negligence claim, stating that "as a general rule . . . a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. The law does not spread that far." *Id.* at 309.

The economic loss doctrine was first applied by the Tennessee Court of Appeals in *Lear Siegler*. There, union workers at a paint factory brought an action against the owner of a neighboring factory to recover lost earnings resulting from the temporary closure of the industrial park in which both factories were located. 825 S.W.3d at 83. The neighboring factory owner had stacked metal racks next to a propane tank storage area, which resulted in a leak that shut down the industrial park. Notwithstanding the factory owner's alleged negligence, the court

decided to "follow the majority rule" and "disallow recovery for purely economic loss absent physical injury or property damage." *Id.* at 87.

Since *Lear Siegler*, which remains good law in Tennessee,[2] a number of other Tennessee courts have applied the economic loss doctrine. *See, e.g., Acuity v. McGhee Eng'g*, 297 S.W.3d 718, 734 (Tenn. Ct. App. 2008) ("[t]he economic loss doctrine provides that, absent privity, one may not recover in negligence where there is no injury to person or property."); *Lincoln Gen. Ins.*, 293 S.W.3d at 491 (applying the economic loss doctrine in the context of a products liability case).[3]

Plaintiffs in this case have not alleged any personal injury or injury to property. Instead, Plaintiffs assert economic damages of $48,000 per day based on allegedly unlawful detention at

---

[2]     Because *Lear Siegler* is a published decision by the Tennessee Court of Appeals that has not been overruled or modified by a subsequent decision of the Tennessee Supreme Court, it is controlling authority on this Court. *See, e.g., Meadows v. State*, 849 S.W.2d 748, 752 (Tenn. 1993).

[3]     The court need not concern itself with a split of authority among the federal district courts applying Tennessee law regarding whether the economic loss doctrine applies outside the context of products liability cases or cases involving the sale of goods pursuant to the UCC. *Compare Ladd Landing*, 874 F. Supp. 2d at 729-31 (concluding that, based on *Lear Siegler*, there is no basis to limit the application of the economic loss doctrine to strictly products liability cases or UCC cases), *with Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915, 922 (W.D. Tenn. 2010) (finding that the economic loss doctrine should be restricted to "claims involving products liability or the sale of goods, at least where the plaintiff can establish a sufficiently direct relationship between the defendant's negligent act and the plaintiff's economic loss"). As an initial matter, *Ladd Landing* is better reasoned and more consistent with the application of the economic loss doctrine in *Lear Siegler*. Moreover, because Plaintiffs' negligence claim seems to relate to the ability of Tyler's Odyssey software to perform in the manner required by the Contract, this matter not only involves the sale of goods, it is akin to a products liability matter alleging that the Odyssey software was defectively developed and implemented. Thus, the policy reasons for applying the economic loss doctrine in products liability or UCC cases are equally applicable here and dictate in favor of the application of the doctrine to Plaintiffs' claims. *See, e.g., Shema Kolainu-Hear Our Voices v. Providersoft, LLC*, 832 F.Supp. 2d 194 (E.D.N.Y. 2010) (applying economic loss doctrine to bar recovery for negligence claim arising from allegation of defective software); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103 (Tex.App.—Houston [14th Dist.] 2000) (holding that economic loss doctrine precluded recovery in tort against software developer); *Huron Toll & Eng. Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541 (1995) (recognizing applicability of economic loss doctrine to nonintentional tort claims arising from software defects).

the Shelby County Jail.  Plaintiffs' alleged economic losses for wrongful incarceration cannot be treated as claims for "physical injury."[4]

From a policy perspective, this is precisely the type of case in which the economic loss doctrine was designed to apply.  As noted, the doctrine had its genesis in the U.S. Supreme Court's *Robins* decision, which warned of the dangers of expanding the duties arising from contractual relationships beyond the confines of the contract and morphing those duties into tort-based duties to third parties.  *See Robins,* 275 U.S. at 309; *see also Lincoln Gen. Ins.,* 293 S.W.3d at 488 (emphasizing the need to distinguish between contract and tort law).  Here, to the extent there is any dispute arising out of or relating to Tyler's obligations under the relevant contract, it is a contractual dispute to be addressed by the parties to the contract: Tyler and Shelby County.  Tyler's contractual duties to the County should not be expanded into tort duties to third parties.  As the Supreme Court said, "[t]he law does not spread that far."  *Robins*, 275 U.S. at 309.  This is especially true where third parties suffer solely economic losses that would typically be recoverable only in contract.  In sum, because Plaintiffs have not and cannot allege any physical injury or damage to property, the economic loss doctrine applies in this case and bars Plaintiffs' negligence claim against Tyler.

---

[4]    Tennessee law has recognized that wrongful incarceration does not translate to "physical injury." *See, e.g., Pierce v. Stinson*, 493 F. Supp. 609, 611 (E.D. Tenn. 1979) (unlawful incarceration not considered to be physical injury for purposes of determining whether adult plaintiffs have no right to recover damages for minors); *see also Mosely v. State*, 475 S.W.3d 767, 773 (Tenn. Ct. App. 2015) ("Here, there are no allegations that any person or instrumentality in the care, custody, or control of the State caused any physical injuries to Mr. Mosely; instead, the only injury alleged by Mr. Mosely concerns the State's statutory duty to release Mr. Mosely from confinement."); *Blalock v. Preston Law Group, P.C.*, No. M2011-00351-COA-R3-CV, 2012 WL 4503187, at *7 (Tenn. Ct. App. Sept. 28, 2012) (citing Tenn. Code Ann. § 28-3-104 and noting that it references wrongful imprisonment as a misuse of the legal system, but not as a claim involving physical injury).

**WHEREFORE,** Tyler respectfully requests that the Court grant its Motion to Dismiss and grant such other and further relief to which Tyler may be entitled.


Dated:  April 13, 2017

                                        Respectfully submitted,


                                        *s/ Bradley E. Trammell*
                                        Bradley E. Trammell (# 13980)
                                        **BAKER DONELSON BEARMAN CALDWELL
                                        & BERKOWITZ**
                                        165 Madison Ave. , Ste. 2000
                                        Memphis, TN 38103
                                        Telephone: 901-526-2000
                                        btrammell@bakerdonelson.com

                                        Beth Bivans Petronio (admitted *pro hac*)
                                        Texas Bar No. 00797664
                                        **K&L GATES, LLP**
                                        1717 Main Street, Suite 2800
                                        Dallas, Texas 75201
                                        Telephone: (214) 939-5500
                                        beth.petronio@klgates.com

                                        **COUNSEL FOR TYLER
                                        TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 13, 2017, a true and correct copy of the foregoing document was forwarded by electronic means through the Court's ECF System and/or email to:

Frank L. Watson , III
WATSON BURNS, LLC
253 Adams Ave
Memphis, TN 38103

Michael G. McLaren
William E. Cochran, Jr.
Brice M. Timmons
BLACK McLAREN JONES RYLAND
& GRIFFEE PC
530 Oak Court Drive, Suite 360
Memphis, TN  38117

*Counsel for Plaintiffs*


Robert E. Craddock , Jr.
Odell Horton, Jr.
Robert L. Crawford
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177-5000

*Counsel for Defendants Sheriff Bill Oldham,*
*Jail Programmer Debra Hammons, Chief*
*Jailor Robert Moore, Assistant Jailor*
*Charlene McGhee, and Shelby County,*
*Tennessee*

Joseph S. Ozment
THE LAW OFFICE OF JOSEPH S.
OZMENT, PLLC
1448 Madison Ave.
Memphis, TN 38104


Claiborne Ferguson
THE CLAIBORNE FERGUSON LAW
FIRM P.A.
294 Washington Avenue
Memphis, TN  38103

*Counsel for Plaintiffs*



Emmett Lee Whitwell
Shelby County Attorney's Office
160 N. Main Street
Suite 950
Memphis, TN 38103


*Counsel for Defendants Sheriff Bill Oldham,*
*Jail Programmer Debra Hammons, Chief*
*Jailor Robert Moore, Assistant Jailor*
*Charlene McGhee, and Shelby County,*
*Tennessee*

_s/ Bradley E. Trammell_____
Bradley E. Trammell